Oldham, J. This was an action of assumpsit brought in the circuit court of Pulaski county by Farrington against Reardon. The declaration contained three counts; 1st, for money had and received; 2d, a special count, and 3d, an account stated. ' The general issue was pleaded and the parties went to trial, and the jury returned a verdict in favor of Farrington for three hundred dollars. During the trial Reardon objected to the reading of the deposition of a witness offered on the part of the plaintiff, and the objection being overruled was saved by exception. He moved for a new trial and in arrest of judgment; both motions being overruled he excepted, and has brought the case into this court by writ of error. The first assignment of errors is that the court below permitted the deposition of Deloach to be read in evidence. The reading of the deposition was opposed upon the ground that specific and sufficient notice of the time of taking the deposition had not been served upon the opposite party, and that the deposition does not appear to have been taken at the place designated by the motion. The statute requires “ notice in writing of the time and place of taking such depositions to be served,” &c. Rev. St. ch. 48 sec. 6, .The notice given in this case is that the plaintiff would “attend at the Commercial Hotel in the Town of Memphis, in the State of Tennessee, on the fifteenth, sixteenth, seventeenth and eighteenth days of October, A. D. 1845, or on either of said days.” If a notice that a party will on four consecutive days or either of them proceed to take depositions be a sufficient notice under the statute, any number of days without limitation might be given and would virtually amount to no notice at all. A compliance with the statute requires a specific time, a day certain to be named on which the depositions will be taken. We are not called upon to say, and do not intend to be understood as saying that a notice to take depositions on a certain day and to continue from day to day would not be sufficient. The notice in this case was, however, too indefinite and the deposition should have been excluded. The other ground upon which the deposition was opposed presents no question. The next question is whether the court erred in refusing the defendant a new trial, and this question depends- upon the fact whether there was sufficient evidence to authorize the verdict of the jury, exclusive of the deposition of Deloach. The testimony of Fowler was all the legal evidence given in behalf of the plaintiff below. He stated that he originally purchased of Farrington the gin stand in question, and that it was forwarded from Memphis, Tennessee, by the plaintiff to witness to a farm in Jefferson county, and there received by witness, but the purchase was can-celled ; that subsequently a contract for the sale and purchase of the gin stand was entered into between Farrington and Simeon Buckner, who at that time resided in Clark county in this State, that the contract last mentioned was conditioned, and according to the terms thereof Buckner was to pay to Farrington or one of his agents the price of the gin stand before the same should be delivered into his possession, and that such price nor any part thereof had ever been paid: That Farrington directed the witness to ship the gin stand to Reardon, at Little Rock, and witness directed his overseer of the farm in Jefferson county aforesaid to ship it to Reardon, that some time afterwards, early in the spring of the year 1841, witness saw said gin stand at the steam boat landing at Little Rock, exposed to the weather, and went to Rear-don and requested him to take charge of it and take care of it, but witness does not now remember that he then mentioned to Rear-don the condition upon which the gin stand was to be delivered to Buckner: That in the spring or early in the summer of 1842, Far-rington came to Little Rock, and witness for him called on the defendant, and asked him if he had heard from Buckner about the gin stand, to which inquiry he replied he had not. In this conversation he informed Reardon of the condition of the contract, it does not appear that he informed Reardon that he called upon him' at the instance of Farrington: That soon after the'said last’inter-View with the defendant, witness demanded of the defendant the gin stand but he refused to give it up,'although he admitted he had it, and had then never heard from Buckner on the subject-,, or from any other person thanv witness. Witness never saw the-gin1 stand after he had requested’ Reardon td'take charge óf it, and-did not subsequently know where it was ate. Fowler further sthted that after Farrington left Little- Rock, Deloach came there; he' thinks this was early in August 1842, and that he and witness (Sailed on Reardon about the gin- stall'd, and he again said he had-not -heard from - Buckner about it but had sent it off, and,-ms witness thinks, said he had sold it. Fowler does nót státe that he had any authority from Farrington for any act done by him except to ship the gin stand from Jefferson county to Reardon at Little Rock,- in the winter or spring of 1841,- and at the instance of the plaintiff called upon the defendant in the spring or summer of 1842. This testimony is very indefinite and uncertain. It leaves us in doubt for what purpose the gin stand was shipped to Reardon, whether Reardon received it as the agent of Farrington or Buckner. The conclusion, however,-is deducible from the fact that he was called upon by Fowler for Farrington to know if he had heard from Buckner and from other circumstances, that it was sent to. him for Buckner. Pie was at no time directed not to deliver the gin stand to Buckner unless it should first be paid for, nor was he authorized as the agent of Farrington to receive pay therefor. The testimony of Dunn, however, clearly shows that Reardon conceived himself in possession of the gin for Buckner, and that he disposed of it according to directions. The whole testimony resolves itself into this; that Farrington sold the gin stand to Buck-, ner who was to pay for it upon receiving possession, that under this contract the gin stand was sent to Reardon, who, so far as the evidence positively goes, did not know from whom it came, or to whom or upon what condition it was to be delivered. It may, however, be inferred from the circumstances, and such is no doubt the fact, that he knew the gin stand was sent to him under the direction of Farrington for Buckner: There is no proof whatever that he knew fot twelve dr fifteen Months after he received the gin stand, what the terms of the contract between Buckner and Farrington were: nor does it áppear that he Was directed at any time not to deliver the gin stand to Buckner unless the price should be paid. It is very clear that this evidence was insufficient to authorize the verdict of the jury: The testimony Of Deloach; which should have been excluded, no doubt had its effect upon their minds. The circuit court should have granted the plaintiff in error á new trial. The only remaining question is whether the second count in the declaration is in case or assumpsit. Upon this point there is no ground for controversy. The count is in assumpsit against the defendant below upon a depositum, the reception of the gin stand being a sufficient consideration for its return and is in strict conformity with the precedent. For the above errors the judgment is reversed and the cause remanded.